UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

19TH JUDICIAL DISTRICT COURT
BUILDING COMMISSION

CIVIL ACTION

VERSUS

NO. 08-745-JVP-SCR

LEVEL 3 COMMUNICATIONS, LLC

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on a motion by defendant, Level 3 Communications, LLC ("Level 3"), for summary judgment (doc. 10). Plaintiff, Nineteenth Judicial District Court Building Commission ("Building Commission"), opposes the motion (doc. 13), and Level 3 has replied to the opposition (doc. 17). Jurisdiction is based upon 28 U.S.C. § 1332. There is no need for a hearing and the matter is now submitted.

**FACTS AND PROCEDURAL HISTORY**

This action, originally filed in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, was removed on November 24, 2008. The petition alleges that the Building Commission is a non-profit corporation that owns property at 312 North Boulevard in Baton Rouge, Louisiana, where it is currently constructing a new public courthouse to serve the needs of the Nineteenth Judicial District Court. In the course of the project's foundation work, the Building Commission learned of several utility facilities

located in the public right-of-way at the site, some of which were fiber-optic cables owned by Level 3.

According to the petition, the Building Commission first requested Level 3 to relocate the fiber-optic cables on August 3, 2007. However, despite repeated requests, and repeated warnings that delay in relocating the cables would result in significant construction delays and increased expenses on the construction project, Level 3 negligently and unreasonably delaying relocating the fiber-optic cables for three and a half months. The petition also alleges that Level 3's unreasonable delay, negligence and inattention, delayed the entire construction project and caused the Building Commission to incur increased expenses and delay damages.

Level 3 answered the petition by denying liability and asserting a counterclaim against the Building Commission. The counterclaim alleges that the "Building Commission has been unjustly enriched by and has enjoyed the benefit of Level 3's voluntary actions in removing and re-locating its fiber cables such that Level 3 should be reimbursed its expenditures, plus applicable interest." (Counterclaim, ¶VI). The counterclaim also asserts a claim based on quantum meruit.

On December 2, 2008, the Building Commission answered the counterclaim by denying liability. Then, on March 23, 2009, Level 3 filed the present motion for summary judgment. The motion is based on Level 3's assertion that it had no duty to move its fiber-optic cables at its own expense.

2

Level 3 argues that the cables were placed subject to a permit from the City of Baton Rouge, Parish of East Baton Rouge ("City/Parish"), and notes that the complaint alleges that the cables were placed in a "public right of way." According to Level 3, the Building Commission had no legal authority to demand that Level 3 move the cables at its expense because the permit provided that the cables need only be moved upon: (1) written notice; (2) from the City/Parish; (3) that the fiber-optic network was interfering with a street improvement, sewage, or drainage project (doc. 10-2). Level 3 argues further that none of the permit's conditions for relocation were met, and, in support of its assertion that it was required to relocate its cable only for a street, sewer, or drainage project, cites *United Gas Pipeline Company v. Lafourche Parish Police Jury, et al*, 338 F.Supp. 1296 (E.D. La. 1972).

In opposition to the motion for summary judgment, the Building Commission argues that Level 3 is liable for damages because Level 3: (1) "breached duties imposed by Louisiana's 'dig law'" by failing to properly mark and identify its fiber-optic cable[1] (doc. 13, pp. 8-10); (2) trespassed by placing the cable network in the lawful footprint of the courthouse project (*id.* at 10-11); and (3) led the Building Commission to detrimentally rely on the Level 3's representation that it would relocate the cable network within a reasonable period

---

[1] Plaintiff cites LSA—R.S. 40:1749.20(A)(2), which provides in pertinent part that every operator of an underground utility or facility "who fails to mark or provide information regarding the location of underground utilities and facilities shall be subject to a civil penalty of not more than two hundred fifty dollars for the first violation and not more than one thousand dollars for each subsequent violation."

(*id*. at 12-13). The Building Commission also argues that the permit issued by the City/Parish is not relevant to the dispute because the Building Commission was not a party to the permit and because neither the permit nor evidence of its transfer were filed in the public record.

Pursuant to Uniform Local Rule 56.1, Level 3 has set forth the following facts that it claims are material to the motion now before the court (doc. 10-3).[2] The material responses of plaintiff are noted in footnotes where appropriate.[3]

1. On January 18, 2001, Williams Communications, Inc. ("Williams") obtained a permit from the City of Baton Rouge, Parish of East Baton Rouge ("City Parish") to install the fiber optic network on North Boulevard in Baton Rouge (the "permit").

2. The fiber optic network was installed by Williams pursuant to the permit, and in the public right of way underneath the sidewalk on North Boulevard.[4]

3. Level 3 is the successor in interest to Williams (then known as Wil'Tel Communications) in 2005.

4. The fiber optic network was owned, operated, and maintained by Level 3 when the 19th Judicial District Building Commission (the "Building Commission") began construction on the new courthouse in Baton Rouge.

---

[2] Irrelevant statements of fact and conclusions of law submitted as statements of fact are not repeated here.

[3] **Error! Main Document Only.**LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[4] Plaintiff contests whether the cables were installed in the public right of way, or in such a way as to encroach upon the lawful construction of the new courthouse (doc. 13-2, ¶¶ 2, 12).

5. The Building Commission's contractor, Walton Construction broke ground for construction work on the courthouse project in July, 2007.

6. In the course of such foundation work, Walton Construction learned that several utility facilities, owned or operated by various entities, were located underground on site.

7. On July 19, 2007, and on July 23, 2007, Walton Construction made Louisiana "One Call" inquiries to locate any buried utilities that might be impacted by the construction work.

8. Both Louisiana One Call "dig tickets" identify Level 3 as having cable in the area of the contemplated construction.

9. The Building Commission and/or its contractor made verbal and informal requests to Level 3 to relocate its fiber optic network.[5]

10. The permit requires Level 3 to move its fiber optic network at Level 3's expense and within 30 days *only* pursuant to: (1) a written request, (2) from the City/Parish, (3) relating to a street, drainage or sewer improvement project.[6]

11. In this case, the Building Commission's request that Level 3 move its fiber optic network was not written, did not come from the City/Parish, and it was not related to a street, drainage or sewer improvement project.[7]

12. The Building Commission's construction project involved new construction of a state courthouse building.

13. Level 3 never received a request to move the fiber optic network from the City/Parish.

---

[5] Plaintiff contests this statement of fact insofar as it may be construed to imply that the Building Commission did not also make express verbal and written requests to relocate the cables (doc. 13-2, ¶ 4).

[6] Plaintiff contests this statement of fact insofar as it may be construed as a conclusion of law but does not controvert the provisions of the permit as stated (doc. 13-2, ¶ 5).

[7] Plaintiff contests this statement insofar as it alleges that no express written request was made (doc. 13-2, ¶ 4).

14. As a courtesy to the Building Commission, Level 3 voluntarily moved its fiber optic network at its own expense in late November, 2007.[8]

15. The Building Commission is an entity, separate and distinct from both the City of Baton Rouge and the Parish of East Baton Rouge.

16. The Building Commission had no contract with Level 3 relating to the fiber optic network when the Building Commission requested Level 3 to move the network.

## LAW AND ARGUMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in its favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). "If the defendant in a . . . civil case moves for summary

---

[8] Plaintiff contests this statement insofar as it states the legal reason for Level 3's relocation of the cables (doc. 13-2, ¶ 9).

6

judgment . . . , [the inquiry is] whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252.

In a diversity case, the court must apply state substantive law; here the applicable law is Louisiana law. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To determine Louisiana law the court must "make an educated '*Erie* guess' as to how the Louisiana Supreme Court would resolve the issues." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248-49 (5th Cir. 2008). In a civil suit, the plaintiff bears the burden of proving negligence by a preponderance of the evidence. *Miller v. Leonard*, 588 So.2d 79 (La.1991).

## Claims of Trespass and Negligence

Insofar as it relates to the claims of trespass and negligence, the present motion for summary judgment rests on Level 3's assertion that the Building Commission has failed to set forth evidence to establish a genuine issue of fact as to whether the fiber-optic cable network encroached on courthouse property.

Trespass, under Louisiana law, is defined as "the unlawful physical invasion of the property or possession of another person." *Powell v. Dorris*, 814 So.2d 763, 772 (La.App. 2 Cir. 2002) (quoting *Versai Management, Inc. v. Montecello Forest Prods. Corp.*, 479 So.2d 477, 482 (La.App. 1 Cir. 1985). A public right-of-way is a public thing. *Giardina v. Marrero Furniture Co., Inc.*, 310 So.2d 607 (La.1975); see also, *Worthen v. DeLong*, 763 So.2d 820 (La.App. 1 Cir. 2000) (*citing* La.Civ.Code art. 450, and stating that "[a] parcel of land

7

dedicated as a public right of way is a public thing"). Article 450 of the Louisiana Civil Code provides in pertinent part that:

> Public things are owned by the state or its subdivisions in their capacity as public persons.
> \*\*\*
> Public things that may belong to political subdivisions of the state are such as streets and public squares.

La.Civ.Code art. 450.

For purposes of the present motion for summary judgment, the undisputed facts establish that the Building Commission is a separate entity from the City/Parish (Statement of Undisputed Facts, ¶ 15), and evidence set forth by Level 3 indicates that the right of way, in which the cables were allegedly placed, is owned by the City/Parish.[9] Therefore, if the cable network was situated entirely within the public right of way, no trespass of Building Commission property occurred.

The original location of the cables is also material to the resolution of the negligence claim asserted by the Building Commission. In support of its motion for summary judgment on the claim against if for negligently failing to promptly mark and relocate its cables, Level 3 argues that no evidence has been set forth to establish that the cable network encroached on property owned by the

---

[9] The fiber-optic network was installed pursuant to a permit issued by the Department of Public Works, City of Baton Rouge, Parish of East Baton Rouge. See (Statement of Undisputed Facts, ¶¶ 1-2; doc. 10, Ex. 2).

Building Commission, and without setting forth such evidence, the Building Commission cannot establish that Level 3 owed any duty to relocate the cables.[10]

If, however, the cable network did encroach on property owned by the Building Commission and interfered with construction of the courthouse, then the Building Commission had legal ground to demand relocation of the cables at Level 3's expense. *See* Article 458 of the Louisiana Civil Code, providing:

> Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.
> The owner of the works may not prevent their removal by alleging prescription or possession.

La.Civ.Code art. 458; see also, *Band v. Audubon Park Com'n.*, 936 So.2d 841 (La.App. 4 Cir. 2006) (holding that article 458 applies to works that encroach upon property owned by a city park commission).

The Building Commission has submitted the affidavit of Matthew Tanory, in which he states that the fiber-optic cable network was located "within the footprint of the new courthouse," and "[s]heet piles were to be driven in the location of the

---

[10] Negligence claims under Louisiana law are evaluated using a four-pronged duty/risk analysis:

    I.    Was the conduct in question a substantial factor in bringing about harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred?
    II.   Did the defendant(s) owe a duty to the plaintiff?
    III.  Was the duty breached?
    IV.  Was the risk, and harm caused, within the scope of protection afforded by the duty breached.

*Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 322 (La.1994).

newly discovered cables." (Tanory Affidavit, ¶ 9). The Building Commission has also submitted daily job progress reports, which, according to the affidavit of Matthew Tanory, were made during the regular course of business on the courthouse project (Tanory Affidavit, ¶ 3). Entries in the daily progress reports indicate that the fiber-optic cable network was holding up placement of sheet piles by September 19, 2007 (doc. 14, pp. 30, 32).

Viewing facts in the light most favorable to the Building Commission and drawing all reasonable inferences in its favor, the court concludes that a reasonable juror could find, from the daily job progress reports and the statements of Matthew Tanory, that Level 3's fiber-optic cable network encroached upon property owned by the Building Commission and obstructed the construction of the courthouse building. Accordingly, the court concludes that the Building Commission has met its burden of setting forth specific facts to demonstrate a genuine issue for trial with regard to the trespass and negligence claims.[11]

**Claim of Detrimental Reliance**

The doctrine of detrimental reliance is codified in the Louisiana Civil Code as follows:

> Cause is the reason why a party obligates himself.

---

[11] The court notes that, according to the petition, the cable network was situated in a public right of way. However, viewing the facts in the light most favorable to the non-movant and construing all reasonable inferences in its favor, the court also notes that the petition's allegation does not preclude a finding that the cable network may have been situated, at least partially, outside of the right of way as well.

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.
> Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La.Civ.Code art. 1967.

"Detrimental reliance, also known as equitable estoppel, prevents a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Garber v. Badon & Ranier*, 981 So.2d 92, 105 (La.App. 3 Cir. 2008). It is not favored by the law and all claims must be examined carefully and strictly. *Id.*

> To prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. Rather, in determining whether a claim for detrimental reliance has been established, the focus is on whether the party proved three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.

*East Tangipahoa Development Company, LLC v. Bedico Junction, LLC*, 5 So.3d 238, 246 (La.App. 1 Cir. 2008) (citing *Suire v. Lafayette City-Parish Consolidated Government*, 907 So.2d 37, 59 (La.2005)). "[T]he focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promise to rely upon it and whether the promisee so relies to his detriment." *Garber*, 981 So.2d at 105.

11

The Building Commission maintains that Level 3 agreed to relocate its cables in a timely manner and assured the Building Commission that its building project schedule would not be interrupted by the relocation of the cables. The Building Commission further maintains that it scheduled the construction project in reliance upon Level 3's assurances, and consequently incurred significant delay costs when the project had to be shut down from October 3, 2007 until the first week of December due to Level 3's failure to relocate the cables in the timely manner promised.

The General Comments section of the September 6, 2007 daily progress report submitted by the Building Commission indicates that, according to "upper management" at Level 3, the contractor was released to perform the cable work and the notice was to be filed on that same day (doc. 14, p. 26). The Stoppages, Delay, Shortages and Losses section of the September 19, 2007 report indicates that the presence of the Level 3 conduit was holding up progress of the sheet pile and that crane and crew costs were factors to consider (doc. 14, p. 30). Moreover, the attachment to the September 19, 2007 report indicates that the contractor received word on that date that the work notice had not yet been filed, despite prior assurance by Dave Williams of Level 3 that the contractor had been released to do the work and the permit was being filed (doc. 14, p. 33).

Accordingly, the court concludes that the Building Commission has set forth specific facts from which a reasonable juror could conclude that the Building Commission relied, to its detriment, on statements made by representatives of

Level 3. Moreover, because Level 3's cables were being relocated to facilitate construction of a new courthouse building, the court finds that a reasonable juror could also conclude that Level 3 knew or should have known that the Building Commission would rely on such statements in the course of scheduling and coordinating the work of crews and heavy equipment.

## CONCLUSION

For the reasons stated above, the motion by defendant, Level 3 Communications, LLC, for summary judgment (doc. 10) is hereby **DENIED**.

Baton Rouge, Louisiana, September 14th, 2009.

```
_____
JAMES J. BRADY
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA
```